IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ALBERT MOSLEY and** * | |
| **JACQUE MOSLEY,** * | |
| * | |
| Plaintiffs, * | |
| * | |
| vs. * | **CASE NO. 22-cv-133** |
| * | |
| **STATE FARM FIRE AND** * | |
| **CASUALTY COMPANY a/k/a STATE** * | |
| **FARM INSURANCE COMPANY, et al.,** * | |
| * | |
| Defendants. * | |

## NOTICE OF REMOVAL

Defendant State Farm Fire and Casualty Company ("State Farm"), by and through its undersigned counsel, with full reservation of all defenses, and pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, files its Notice of Removal of this cause from the Circuit Court of Mobile County, Alabama to the United States District Court for the Southern District of Alabama, Southern Division. In support of the removal of this action, State Farm sets forth the following short and plain statement showing the grounds for removal:

### INTRODUCTION

1. This lawsuit is a civil action within the meaning of the Acts of Congress relating to the removal of cases. *See* 28 U.S.C. §§ 1441(b), 1446(b).

2. Plaintiffs Albert and Jacque Mosley (hereinafter "Plaintiffs") instituted Civil Action No. 02-CV-2021-902049, styled *Albert and Jacque Mosley v. State Farm Insurance Company,* on November 18, 2021, against State Farm in the Circuit Court of Mobile County, Alabama. Pursuant to 28 U.S.C. § 1446(a), State Farm attaches as **Exhibit A** true and correct

copies of all processes, pleadings, and orders served on State Farm in this action and/or otherwise filed in the Circuit Court of Mobile County.

3.     In Plaintiffs' initial Complaint filed *pro se*, their only claim was for Request for Appointment of an Umpire. (Compl., ¶¶ 18,19). In the Plaintiffs' Amended Complaint filed on March 2, 2022, Plaintiffs omitted the claim for Request for Appointment of an Umpire and changed the name of Defendant "State Farm Insurance Company" to "State Farm Fire and Casualty Company also known as State Farm Insurance Company." (Am. Compl,). Plaintiffs stated claims against State Farm for breach of contract; bad faith refusal to investigate and pay valid claims; negligent misrepresentation and suppression; negligent hiring, training, supervision and retention; and appraisal. (*Id.* at ¶¶ 39-85). Specifically, Plaintiffs allege that State Farm issued an insurance policy to Plaintiffs that provided coverage to their residence that was in effect on October 28, 2020. (*Id.* at ¶¶ 2, 15, 16). Plaintiffs further allege that their property was damaged by Hurricane Zeta on October 28, 2020 and that State Farm has failed to pay for the damages owed under the insurance policy. (*Id.* at ¶¶ 3, 6). Additionally, Plaintiffs allege that State Farm breached its duty to Plaintiffs for accepting their policy premium payments for many years and not providing coverage for the damages allegedly caused by Hurricane Zeta. (*Id.* at ¶¶ 42, 43, 48, 52, 63, 70). Also, Plaintiffs allege that State Farm was negligent in its employment practices regarding an independent contractor adjuster who inspected the Plaintiffs property after Hurricane Zeta. (*Id.* at ¶¶ 73-80). In addition to property damage, Plaintiffs' Amended Complaint seeks mitigation costs, punitive damages, mental anguish damages, injunctive relief, and "all other relief deemed fair and just under the circumstances". (*Id*. at ¶¶ 54, 64, 72, 86).

4.     State Farm investigated Plaintiffs' insurance claim and estimated that the covered damages to Plaintiffs' residence was $5,212.56. State Farm attaches as **Exhibit B** true and correct

copies of the Summaries of Coverage A – Dwelling and Dwelling Extension– 35 Windstorm and Hail for Claim No. 01-18J1-97W. After applying the deductible of $2,207.00, State Farm made payments to Plaintiffs totaling $2,306.92. Ex. B. *Id*.

5. Plaintiffs submitted their own detailed repair estimate to State Farm for the amount they claimed to be owed under the policy. Plaintiffs' repair estimate, which was prepared by Lydell Johnson of Property Claims Damage Consulting, determined that the damages to Plaintiffs' dwelling covered under the policy totaled $43,118.55. State Farm attaches as **Exhibit C** a true and correct copy of the Property Claims Damage Consulting estimate that Plaintiffs submitted to State Farm. Thus, the amount of dwelling damages alone that Plaintiffs' claim to be owed under the insurance policy is at least $38,109.51 more than what State Farm determined. In addition to real property damage, Plaintiffs specifically claim injunctive relief, punitive damages, mental anguish, emotional distress, and "all other relief deemed fair and just under the circumstances." Ex. A at ¶¶ 54, 64, 72, 86. As shown herein, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## NOTICE OF REMOVAL IS TIMELY

6. Plaintiffs instituted this action on November 18, 2021, in the Circuit Court of Mobile County, Alabama. Ex. A. *Id*. Defendant was not properly served with the Complaint; however, Defendant answered the Complaint on February 9, 2022. Ex. A. *Id*. Plaintiffs filed an Amended Complaint on March 2, 2022, and Defendant agreed to accept service on the same day. Ex. A. *Id*. The Amended Complaint was the initial pleading received by State Farm setting forth the claims for relief upon which this action is based. State Farm filed its Answer to the Amended Complaint on March 14, 2022. Ex. A. *Id*.

7. Plaintiffs' initial Complaint is not the initial pleading to be considered for removal, because the only claim in the initial Complaint was for Request for Appointment of an Umpire. Ex. A. *Id*. No monetary relief was sought in the initial Complaint. Ex. A. *Id*. Plaintiffs' only specific request for relief was for "appointment of an umpire to determine the amount of the loss to the Residence and its appurtenances." Ex. A. *Id*. Plaintiffs also requested "other and further relief as the Court deems proper and just." Ex. A. *Id*. The request for the Court's appointment of an umpire was nonmonetary (i.e., injunctive) in nature. "When a plaintiff seeks injunctive relief, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted, or, conversely, the losses that will follow from not obtaining the injunction." *Hartung v. PHH Mortg. Corp.*, No. CV21-00099-CG-C, 2021 WL 3185773, at *3 (S.D. Ala. Jul. 9, 2021) (Cassady, M.J.), *adopting report and recommendation*, No. 21-0099-CG-C, 2021 WL 3179302 (S.D. Ala. Jul. 26, 2021) (Granade, J.) quoting *Mixon v. Nationstar Mortg. LLC*, 62 F. Supp. 3d 2321, 1323 (S.D. Ala. 2014) (internal quotations omitted).

8. The monetary value of the Plaintiffs obtaining an umpire for appraisal is highly speculative, especially given that an appraisal itself is to determine the monetary amount of loss. In addition, no claim was made for punitive damages, mental anguish, or emotional distress as in the Amended Complaint. Because the value of the injunctive relief requested in the initial Complaint was so speculative, and because it did not seek additional damages, the amount in controversy was not greater than $75,000.00 as required for diversity jurisdiction under 28 U.S.C. § 1332(a). Thus, when Plaintiffs filed the Amended Complaint elaborating on the myriad of damages which the Plaintiffs now seek under their new claims, the amount in controversy became greater than $75,000.00 as required for diversity jurisdiction under 28 U.S.C. § 1332(a). State Farm is filing this Notice of Removal within thirty days of the receipt of the Amended Complaint

which sets forth the claims for relief upon which this action is based. Therefore, the Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b).

## THIS CIVIL ACTION IS REMOVABLE TO THIS COURT

9. This action is removable pursuant to 28 U.S.C. § 1441(a) because it is a civil action of which this Court has original jurisdiction pursuant to 28 USC § 1332(a)(1), in that complete diversity of citizenship exists between the Plaintiffs and State Farm and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because State Farm is removing this action to the District Court of the United States for the district and division embracing the place where the action is pending.

## COMPLETE DIVERSITY EXISTS BETWEEN THE PARTIES

10. The Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and because complete diversity of citizenship exists between Plaintiffs and State Farm. Plaintiffs are residents of Mobile County, Alabama (Am. Comp., ¶ 2). As further evidence of Plaintiffs' residence, State Farm attaches hereto the declarations page of the insurance policy at issue listing Plaintiffs' mailing address in Mobile, Alabama (**Exhibit D**), and the Mobile County Property Tax report showing Plaintiffs' homestead exemption (**Exhibit E**).[1] Thus, the Plaintiffs are, and were at the time of the institution of this civil action and filing of this removal, citizens of Alabama. State Farm is and was at the institution of this civil action and the filing of this removal, a corporation organized and existing under the laws of the State of Illinois, and having its principal place of business in Bloomington, Illinois. *See* Declaration of State Farm's

---

[1] A homestead is defined as a single-family owner-occupied dwelling and the land thereto, not exceeding 160 acres. The property owner may be entitled to a homestead exemption if he or she owns a single-family residence and occupies it as his or her primary residence on the first day of the tax year for which they are applying. https://revenue.alabama.gov/property-tax/homestead-exemptions; see also, Ala. Code § 40-9-19.

Assistant Secretary-Treasurer, Michael Roper, attached hereto as **Exhibit F**. As a result, State Farm is not now, and was not at the time of the filing of either the initial Complaint or Amended Complaint, a citizen or resident of the State of Alabama within the meaning of the Acts of Congress related to the removal of causes.

## THE AMOUNT IN CONTROVERSY EXCEEDS $75,000.00

11.     Diversity jurisdiction requires an amount in controversy of greater than $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

12.     Pursuant to 28 U.S.C. § 1446(c)(2), the amount demanded in a plaintiff's complaint "shall be deemed to be the amount in controversy." However, the statute carves out two exceptions to this default rule. *Id.* § 1446(c)(2)(A). The first exception occurs when the complaint seeks nonmonetary relief. *Id.* § 1446(c)(2)(A)(i). The second exception occurs when the applicable state law "permits recovery of damages in excess of the amount demanded the notice of removal may assert the amount in controversy. *Id.* § 1446(c)(2)(A)(ii). In either scenario, removal is proper if "the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." *Id.* § 1446(c)(2)(B).

13.     Here, Plaintiffs state in their complaint that the "total claim is under $75,000.01." However, Plaintiffs do not state that they will neither ask for nor accept a jury award in excess of $75,000.00. Instead, it is not clear what Plaintiffs are referring to as the "total claim," whether it be the value of the total insurance claim that is the basis of Plaintiffs' lawsuit, one of the five claims enumerated in the Plaintiffs' complaint, what they will ask a jury to award them, or what award they will accept from a jury. Regardless of its meaning, the exception set forth in 28 U.S.C. § 1446(c)(2)(A)(ii) applies, as Alabama practice allows a plaintiff in a tried case to recover in

6

excess of the amount claimed in the complaint, s*ee* Ala. R. Civ. P. 54(c). Since the exception applies, the Plaintiffs will be permitted to recover more than $75,000.00 when the case is tried.

14. When asserting an exception under 28 U.S.C. § 1446(c)(2)(A), the defendant must establish the amount in controversy exceeds $75,000 by the preponderance of the evidence. *Harris v. Aghababaei*, 81 F. Supp. 3d 1278, 1281 (M.D.Ala. 2015); *see also Andrews v. Camping World, Inc.*, No. CV15-00492-CG-N, 2015 WL 7770681, at *3 (S.D. Ala. Nov. 16, 2015) (Nelson, M.J.), *adopting report and recommendation*, No. 15-0492-CG-N, 2015 WL 7776590 (S.D. Ala. Dec. 2, 2015) (Granade, M.J.). Under this standard, the defendant "is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F. 3d 744, 754 (11th Cir. 2010). Rather, in evaluating a removing defendant's jurisdictional showing, courts do not "suspend reality, or shelve common sense," but instead "may use their judicial experience and common sense in determining whether the case stated in the complaint meets federal jurisdictional requirements." *Roe*, 613 F. 3d at 1062 (citations omitted).

15. "[A] district court is not bound by the plaintiff's representations regarding its claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010). "Indeed, in some cases, the defendant or the court itself may be better-situated to accurately assess the amount in controversy." *Id*. Therefore, the Court is not bound by the Plaintiffs' assertion that their total claim is under $75,000.01, especially when considering Plaintiffs' five counts against Defendant and the various types of damages requested, including injunctive relief, punitive damages, mental anguish damages, out-of-pocket expenses, and compensatory damages.

16. The amount in controversy requirement to retain jurisdiction is clearly satisfied in this case in which the Plaintiffs request various damages in excess of $75,000.00 which are

elaborately described in the five separate counts in their Amended Complaint. For example, the detailed repair estimate of the dwelling damages submitted on Plaintiffs' behalf totals $43,118.55 (in comparison to State Farm's Summary of Loss reflecting that the real property damages were $5,009.04). Exs. B and C. Plaintiffs' amount in controversy for the claimed damages alone is at least $38,109.51, without considering Plaintiffs' other claims for damages.

17. Plaintiffs' claims for damages are supported by allegations showing clearly that Plaintiffs are seeking and will accept greater than $75,000.00. For example, Plaintiffs allege that policy premiums they paid to State Farm over the course of 55 years are "worth hundreds of thousands of dollars." (Am. Compl., ¶ 15). Plaintiffs not only state the amount of premiums they paid to State Farm, but also directly put those policy premiums at issue multiple times in their Amended Complaint by alleging:

A) that "State Farm accepted payments for premiums from Plaintiffs for fifty-five years, had opportunities to inspect the Property over fifty-five years, could have refused or exempted coverage or issued amendments, endorsements, limitations, or exclusions, [did not do so,] and waited until Hurricane Zeta to tell Plaintiffs that they did not have insurance for which they had paid;" (*Id.* at ¶ 5);

B) that "State Farm had ample opportunity to inspect the Property and know its condition before issuing the Policy to Plantiffs, and before accepting money from Plaintiffs for coverage under the Policy;" (*Id.* at ¶ 42);

C) that "State Farm cannot insure the Property, accept premiums, and then say the claim for Storm damage was due to wear and tear, mechanical failure, poor installation, and/or other preexisting conditions that would have made it uninsurable if State Farm's position is honest;" (*Id.* at ¶ 43);

E) that "State Farm cannot lawfully accept money to insure the Property, visible upon any inspection prior to the issuance and renewals of the Policy over [55] years, or even over the past decade since the roof was replaced, and then later deny coverage due to alleged wear, tear, and mechanical breakdown;"   (*Id.* at ¶ 48);

E) that "State Farm breached its fiduciary duty to Plaintiffs when it initially issued the Policy, repeatedly renewed the Policy, accepted Plaintiffs' premiums, and then failed to honor the terms of the Policy, reneging on its end of the bargain it had with Plaintiffs under the Policy."   (*Id.* at ¶ 52);

F) that "… Plaintiffs were injured in that they paid premiums and commissions and then only when a loss occurred, after it was too late, did State Farm inform Plaintiffs that they would not be paid enough to cover the damage to the Property, as they were promised under the Policy." (*Id.* at ¶ 70);   and

G) that Plaintiffs allege they "have lost the value of the premiums, and the inherent commissions within those premiums, that they paid for their insurance under the Policy, as well as the time value of money for their premiums and commissions."   (*Id.* at ¶ 63(e)).

18.     Thus, Plaintiffs are not only asserting that $38,109.51 from the property damage is at issue, but also directly asserting that "hundreds of thousands of dollars" Plaintiffs paid to State Farm are also at issue.  These specific dollar amounts pled, along with Plaintiffs' explanation of how premiums are at issue in this case, should support a finding that, by the preponderance of the evidence, that the amount in controversy exceeds $75,000.00, despite Plaintiffs' allegation that "the total claim is under $75,000.01…"   (*Id.* at. ¶ 14).

19.     In addition to the policy premiums at issue, this Court should strongly consider Plaintiffs' claims for punitive damages, mental anguish and "all other relief" when determining

the amount in controversy. Federal courts in Alabama have repeatedly found the amount in controversy requirement to be satisfied in insurance cases when a plaintiff has claimed a specific amount of compensatory damages less than the amount required for diversity jurisdiction, plus unspecified additional damages. *Rogers v. Hartford Life and Acc. Ins. Co.*, 2012 WL 887482 (S.D. Ala. 2012) (amount in controversy satisfied where plaintiff claimed $51,000 in unpaid insurance benefits plus emotional distress and punitive damages); *Henry v. Nationwide Ins. Co.*, 2007 WL 2409817 (S.D. Ala. 2007) (diversity jurisdiction existed where plaintiff's claim was for $35,000-$40,000 in compensatory damages plus unspecified punitive damages, and stating, "In Alabama, in suits against insurance companies claiming contract breach, fraud or other intentional torts, the punitive damages verdict often exceeds the compensatory damages verdict."); *Shepherd v. State Farm Fire and Cas. Co.*, 2012 WL 3139752 (N.D. Ala. 2012) (diversity jurisdiction existed when the plaintiff claimed $38,549.19 in compensatory damages and damages in "an amount to be determined by a jury" for his bad faith claim).

20.   The potential recovery of punitive damages alone has been generally sufficient to show an amount in controversy jurisdictional requirement, even where compensatory damages are substantially less than $75,000. *See, e.g., Krikorian v. Ford Motor Co.,* No. 1:19-00582-KD-N, 2019 WL 7042939 (S.D. Ala. Nov. 6, 2019) (Nelson, M.J.), *adopting report and recommendation*, 2019 WL 7038265 (S.D. Ala. Dec. 20, 2019) (DuBose, C.J.) (in action for fraud involving sale of new vehicle, where difference in value between vehicle as represented and its actual value at the time of sale was approximately $1,000, and where plaintiff alleged unspecified "out-of-pocket costs" and "aggravation and mental anguish," the prospect of punitive damages for defendant's alleged concealment of its defective transmissions demonstrated, by a preponderance of the evidence, that the amount in controversy likely exceeded $75,000); *Rogers v. Hartford Life and*

*Acc. Ins. Co.,* No. 12-0019-WS-B, 2012 WL 887482, at *1 n.1 (S.D. Ala. March 15, 2012) (amount in controversy satisfied where plaintiff was claiming $51,000 in unpaid insurance benefits arising from death of her spouse, additional damages for punitive damages based on defendant's allegedly fraudulent conduct in denying her insurance claim); *Henry v. Nationwide Ins. Co.,* No. 06-0612-CG-M, 2007 WL 2409817, at *2 (S. D. Ala. Aug. 22, 2007) (diversity jurisdiction existed where plaintiff claimed $35,000 - $40,000 in personal property losses from burglary and sought punitive damages for bad faith denial of claim).

21. As recognized by this Court in *Henry*, "[i]n Alabama, in suits against insurance companies claiming contract breach, fraud or other intentional torts, the punitive damages verdict often exceeds the compensatory damages verdict." 2007 WL 2409817, at *2. By statute, in cases such as the present, not involving physical injury or a defendant which is a "small business," punitive damages may be as much as three times the compensatory damages amount or $500,000, whichever is greater. *See* Ala. Code §6-11-21(a). The Eleventh Circuit and this Court have held that a state's statutory cap on punitive damages is relevant to determining the amount in controversy. *See Ryan v. State Farm Mut. Auto. Ins. Co.* 934 F.2d 276, 277 (11th Cir. 1991); *McDaniel v. Fifth Third Bank*, 568 Fed. Appx. 729, 731-32 (11th Cir. 2014); *Krikorian*, 2019 WL 7038265, at *6 n. 12; *Larouse v. Hammond*, No. CV 1:18-00080-CG-N, 2018 WL 1956121, at *5 (S.D. Ala. Apr. 10, 2018) (Nelson, M.J.), *report and recommendation adopted*, No. CV 18-0080-CG-N, 2018 WL 1952526 (S.D. Ala. Apr. 25, 2018) (Granade, J.).

22. In this case, Plaintiffs have also made it clear that their punitive damages and mental anguish claims are greater than $75,000.00 by relying on emotional pleas concerning the Plaintiffs' status as elderly individuals, lengthy marriage, and faithfulness to each other and by further

11

supporting their claims with inflammatory sarcasm and irony. (Am. Compl., ¶¶ 28, 33, 50). For example, Plaintiffs allege:

A) that "Plaintiffs Albert Mosley, eighty-three years old, and Jacque Mosley, seventy-nine years old, have been married for fifty-nine years;" (*Id.* at ¶ 7);

B) that "… the appraisal process and claim are at a standstill, leaving Plaintiffs, an elderly couple (*who have been as faithful to State Farm over fifty-five years as they have been to each other in their fifty-nine year marriage*) in limbo as *precious time is passing by*;" (*Id.* at ¶ 28) (emphasis added);

C) that "State Farm refused to estimate for a replacement of the roof and other covered damage and leaks to the Property or consider Plaintiffs' estimate, *even with Plaintiffs' age, health, and safety as a prominent issue*;" (*Id.* at ¶ 33) (emphasis added); and

D) that "State Farm has improperly … falsely advertised and promoted itself contrary to the way it acted toward Plaintiffs and *without being "like a good neighbor" at all*; (*Id.* at ¶ 50) (emphasis added).

23.    In addition, Plaintiffs' punitive damages and mental anguish claims are dependent on the alleged pattern and practice that "State Farm has denied tens of thousands if not hundreds of thousands, of claims using the language of the denial." (*Id.* at ¶ 23). Plaintiffs similarly allege that "State Farm refused to provide for a full roofing system replacement, claiming it was not payable, because the damage to the roofing system is due to 'wear, tear, and mechanical breakdown' as State Farm has asserted on *tens of thousands if not hundreds of thousands of other claims to other unsuspecting Policyholders who do not know State Farm will deny their claim until it is too late.*" (*Id.* at ¶ 46) (emphasis added).

24. The only purpose of these allegations concerning Plaintiffs' status as elderly individuals, their lengthy marriage, their faithfulness to each other, their health and safety, State Farm's wrongful patterns or practices, especially when coupled with the sarcasm and irony used, is to bolster the Plaintiffs' punitive damages and mental anguish claims way beyond the value of $75,000.00 by evoking an emotional response from a jury. Therefore, regardless of the amount of property damages at issue, the amount in controversy is satisfied based on Plaintiffs' claims for punitive damages, mental anguish and all-encompassing claim for "any other relief". (*Id.* at ¶ 86).

25. Finally, Plaintiffs claim other damages, the exact dollar amount of which is not specified in the Amended Complaint, that should be considered in determining the amount in controversy at issue. For example, the Plaintiffs claim damages for out-of-pocket expenses to mitigate their property damages, to prevent safety hazards, and to prevent consequential damages. (*Id.* at ¶ 4). Also, the Plaintiffs claim damages for temporary repairs they allege they had to make to the property. (*Id.* at ¶ 63(a)). The Plaintiffs also seek injunctive relief to require State Farm to participate in an appraisal as demanded by the Plaintiffs. These various types of damages should be considered in the determination of the amount in controversy.

26. Based on the property damage, the policy premiums at issue, the punitive damages sought, the mental anguish and emotional distress claims, the out-of-pocket expenses, the cost of temporary repairs, and all other damages specifically requested in the Amended Complaint, the amount in controversy is undoubtedly in excess of $75,000.00, despite Plaintiffs' allegation that "the total claim is under $75,000.01…" (*Id.* at. ¶ 14).

**THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISIFED**

27. As set forth above, this Notice of Removal is filed within thirty days of service of the Summons and Complaint upon the defendant State Farm.

13

28.     Pursuant to 28 U.S.C. § 1441(a), the United States District Court for the Southern District of Alabama is the appropriate court for filing a notice of removal from the Circuit Court of Mobile County, Alabama, where this action is pending.

29.     The Defendant will file with the Clerk of the Circuit Court of Mobile County, Alabama, a copy of this notice and certify that it will promptly give notice of removal to all adverse parties as required by law.

WHEREFORE, State Farm, desiring to remove this case to the United States District Court for the Southern District of Alabama, Southern Division, being the district and division of said Court for the County in which the state court action is pending, prays that the filing of this Notice of Removal with the Clerk of this Court and a copy with the Circuit Court of Mobile County, Alabama, shall effect the removal of this suit to this Court.

Respectfully submitted this the 31st day of March, 2022.

                                      **/s/ Thomas Ryan Luna**
                                      JAMES B. NEWMAN
                                      THOMAS RYAN LUNA
                                      SAMANTHA N. GUNNOE
                                      Attorneys for Defendant, State Farm
                                      Fire and Casualty Company

OF COUNSEL:

HELMSING, LEACH, HERLONG,
   NEWMAN & ROUSE, P.C.
Post Office Box 2767
Mobile, Alabama  36652
(251) 432-5521 - Office
Email: jbn@helmsinglaw.com
       trl@helmsinglaw.com
       sng@helmsinglaw.com

## **CERTIFICATE OF SERVICE**

  I hereby certify that I have on this the 31st day of March, 2022, served a copy of the foregoing pleading by electronic filing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

 Elizabeth A. Citrin, Esq.
 Elizabeth A. Citrin, P.C.
 28311 N. Main Street, Ste. B-103
 Daphne, AL 36526
 elizabeth@elizabethcitrin.com

              **/s/ Thomas Ryan Luna**
              OF COUNSEL

4854-8970-1651, v. 1