IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALBERT MOSLEY, et al., | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 22-0133-WS-MU |
| | ) |
| STATE FARM FIRE AND CASUALTY | ) |
| COMPANY, etc., | ) |
| | ) |
|    Defendant. | ) |

**ORDER**

This matter is before the Court on the plaintiffs' motion to remand. (Doc. 5). The parties have filed briefs in support of their respective positions, (Docs. 6, 8, 11), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be denied.

The plaintiffs, proceeding *pro se*, filed this action in state court in November 2021. (Doc. 1-2 at 6-11). The parties agree that the original complaint did not render the action removable. In March 2022, the plaintiffs, now acting through counsel, filed an amended complaint. (*Id*. at 138-53). According to the amended complaint, the defendant insured the plaintiffs' dwelling against various hazards. The property, in particular the roof, was damaged in Hurricane Zeta, and the plaintiffs filed a claim. The defendant's representative estimated damages at $5,009.04, while the plaintiffs' representative estimated damages at $43,118.55. The defendant paid the lower amount, less the deductible.

The amended complaint asserts claims for breach of contract, bad faith, misrepresentation/suppression, negligent employment, and invocation of the policy's appraisal process. The concluding *ad damnum* clause seeks "compensatory, consequential, and general damages for the full amount of coverage as provided under the Policy"; punitive damages; mental

anguish/emotional distress; attorney's fees, costs and expenses; and injunctive relief requiring the defendant to pay sums due and to participate in the appraisal process. (Doc. 1-2 at 152-53). The amended complaint does not demand any particular sum, but it does state that "[t]he total claim is under $75,000.01, exclusive of interest and costs." (*Id*. at 140).

The defendant timely removed on the basis of diversity. The notice of removal adequately demonstrates diverse citizenship, but the motion to remand challenges the defendant's assertion that the amount in controversy exceeds the jurisdictional amount. The defendant acknowledges that, as the party invoking federal jurisdiction, it bears the burden of making the requisite jurisdictional showing. (Doc. 1 at 7). The defendant correctly notes that, despite the amended complaint's express cap on the amount demanded, removal is proper "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." 28 U.S.C. § 1446(c)(2).

It is clear that the amount in controversy is at least $38,109.51, representing the difference between the plaintiffs' estimate of damages and the defendant's estimate.[1] The defendant offers several arguments to show that the amended complaint places at least an additional $36,890.50 in controversy.

First, the defendant notes that the amended complaint refers to the "hundreds of thousands of dollars" the plaintiffs have paid the defendant in premiums over half a century, (Doc. 1-2 at 140), the value of which has been lost by the defendant's non-payment on their claim. (*Id*. at 149). According to the defendant, the amended complaint thereby places all this money "at issue." (Doc.

---

[1] The defendant suggests the relevant figure is the plaintiffs' estimate of $43,118.55. (Doc. 8 at 6). The defendant, however, has already paid the plaintiffs $2,103.40 of this amount, (Doc. 1-2 at 141), and the deductible of $2,207.00, (Doc. 1 at 3), is not recoverable under any scenario. The defendant has affirmatively acknowledged that the relevant figure for diversity purposes is $38,109.51. (*Id*. at 3, 8, 9).

2

1 at 8-9). The amended complaint, however, does not seek recovery of premiums paid, and the value of such premiums is thus irrelevant for jurisdictional purposes.

Second, the defendant notes that the amended complaint seeks recovery for "out of pocket costs to mitigate damages expeditiously." (Doc. 1-2 at 149). The amended complaint references such costs in several places, (*id.* at 139, 148), but it nowhere alleges the amount of such costs. Nor does the defendant offer any means of estimating them. (Doc. 1 at 13; Doc. 8 at 6). The defendant correctly notes that the Court "may use [its] judicial experience and common sense" in evaluating the amount in controversy, and in doing so it may "make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings." *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (internal quotes omitted). What the Court may not do, however, is "speculate," or "hazard a guess on the jurisdictional amount in controversy … in an attempt to make up for the [removal] notice's failings." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010) (internal quotes omitted). Without information the defendant does not provide, the Court cannot, without resorting to impermissible speculation, assume that the plaintiffs' mitigation costs are more than minimal.[2]

Third, the defendant asks the Court to consider the demand that the defendant participate in an appraisal process. (Doc. 1 at 13). While the value of injunctive relief to a plaintiff may be considered, the defendant itself describes the monetary value of such relief as "highly speculative." (*Id.* at 4). As such, it may not be assigned any value for jurisdictional purposes.

Remaining for consideration are the amended complaint's demand for emotional distress damages and punitive damages.[3] As to the former, the

---

[2] The plaintiffs in brief suggest their only mitigation cost was a tarp. (Doc. 6 at 2). No evidence of the cost of such a covering is before the Court.

[3] The defendant does not assert that the amended complaint's demand for attorney's fees or costs, (Doc. 1-2 at 153), may be considered. The defendant does

3

defendant's only argument is that the amended complaint alleges the plaintiffs are elderly, that they have been married for 59 years, and that the defendant refused to estimate a replacement value for their roof "even with Plaintiffs' age, health, and safety as a prominent issue." (Doc. 1 at 11-12 (quoting Doc. 1-2 at 6)). The defendants do not point to any health or safety issue identified in the amended complaint, and they do not explain how the plaintiffs' age correlates with emotional distress.

As to punitive damages, this Court has repeatedly observed that "there is nothing talismanic about such a demand [for punitive damages] that would *per se* satisfy the amount-in-controversy requirement …." *Boehm v. Terminix International Company Limited Partnership*, 2022 WL 229890 at *3 (S.D. Ala. 2022) (internal quotes omitted). The defendant insists that punitive damages awards against insurers often exceed compensatory damages. (Doc. 1 at 11). That may be so, but the Eleventh Circuit has ruled that the mere fact a number of Alabama cases have awarded over $75,000 in punitive damages for bad faith "does nothing to overcome the indeterminate and speculative nature of" a defendant's assertion that the bad faith claim asserted against it placed even $25,000 in controversy. *Federated Mutual Insurance Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 809 (11th Cir. 2003). More generally, and as this Court has also noted, "the Eleventh Circuit has evinced a pronounced skepticism of results in other cases as a means of satisfying a removing defendant's burden of showing that the amount in controversy exceeds the jurisdictional amount." *Patterson v. Fresenius Kidney Care USA Midtown*, 2020 WL 7640822 at *2 (S.D. Ala. 2020) (internal quotes omitted).

---

suggest the Court should consider the catch-all demand for "all other relief," (*id*.), but it does not even identify what such relief might consist of, much less explain how the additional value of such unknown relief could be non-speculatively estimated. (Doc. 1 at 9, 13).

According to the defendant, the Eleventh Circuit "ha[s] held that a state's statutory cap of punitive damages is relevant to determining the amount in controversy." (Doc. 1 at 11). Because punitive damages in this case are capped by statute at $500,000,[4] the defendant assumes that a large amount of such damages must be in controversy. The authorities the defendant cites, however, do not support its conclusion.

In *Ryan v. State Farm Mutual Automobile Insurance Co.*, 934 F.2d 276 (11th Cir. 1991), the Court held only that, where the complaint expressly demanded $100,000 in punitive damages and Georgia law did not impose a lower cap on punitive damages, the full $100,000 demanded could be considered in determining the amount in controversy. *Id.* at 277. It is certainly true, as *Ryan* holds, that the punitive damages in controversy cannot exceed the legal limit on such damages, but *Ryan* says nothing about there being any relationship between the existence or size of a statutory cap on punitive damages (assuming it is above the jurisdictional threshold) and the amount placed in controversy under any given set of allegations.[5]

In *McDaniel v. Fifth Third Bank*, 568 Fed. Appx. 729 (11th Cir. 2014), the Court indicated that, in evaluating the amount in controversy under the Class Action Fairness Act ("CAFA"), a court is to include the full amount of punitive damages that "*could*" be awarded, determined by the state statutory cap on such damages. *Id.* at 731-32 (emphasis in original). The *McDaniel* Court relied for this proposition on a Seventh Circuit opinion, from which it also derived the proposition that, "unless recovery of an amount exceeding the jurisdictional amount is legally impossible, the case belongs in federal court." *Id.* at 732 (internal quotes omitted). The *McDaniel* panel cited no Eleventh Circuit decision

---

[4] Ala. Code § 6-11-21(a).

[5] The defendant offers no reason to believe that identical allegations place a different amount in controversy depending on whether state law caps punitive damages at, say, $150,000 or $300,000.

for this proposition, and no Eleventh Circuit opinion has cited *McDaniel*. To accept the defendant's reading of *McDaniel* is to accept that any bad faith claim against the defendant under Alabama law, no matter how mild the wrong or how small the actual damages, automatically satisfies the amount in controversy requirement, because in all such cases a punitive damages award of $500,000 is legally possible. "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Construction, Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir.2007). To the uncertain extent *McDaniel* can be read as approving a determination of the amount in controversy based on statutory caps rather than on the allegations of the complaint, the Court does not find it persuasive and declines to follow it.

This Court has looked to whether "specific facts are provided to suggest that [the defendant's] alleged actions were or might have been so egregious or reprehensible to support a substantial punitive damages demand." *Thompson v Ortensie*, 2017 WL 4772741 at *3 (S.D. Ala. 2017). The only specific fact on which the defendant relies for the proposition that substantial punitive damages are in controversy is that the amended complaint alleges a vast "pattern and practice" of wrongfully denying claims. (Doc. 1 at 12). This Court has recognized that "alleg[ations] that the defendants' conduct was part of a pattern or practice of similar fraudulent conduct" would "indicate that a significant award of punitive damages" is sought. *Moore v. Allstate Indemnity Co.*, 2006 WL 2730743 at *3 (S.D. Ala. 2006).

The amended complaint alleges that the defendant has denied "hundreds of thousands of claims" on policies providing for replacement coverage using the same "wear, tear, and mechanical breakdown" language it employed in denying the plaintiffs' claim. (Doc. 1-2 at 141, 145-46). The Court agrees with the defendant, (Doc. 1 at 13), that there is no reasonable construction of these allegations other than as evincing the plaintiffs' intent to seek substantial punitive damages based not only on the defendant's conduct towards the plaintiffs but

6

based also on its similar conduct towards thousands of other policyholders. The plaintiffs, provided the opportunity to explain away these allegations, elected to ignore them, (Doc. 11), leaving the defendant's reasonable construction of their import unchallenged.

The plaintiffs' motion to remand rests firmly on the incorrect premise that the amended complaint's capping of the damages sought at $75,000.00 requires the defendant to "prove to a legal certainty that plaintiff's claim must exceed" that amount. *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). However, and as the plaintiffs concede in their reply brief, (Doc. 11 at 1), the *Burns* standard was superseded by the 2011 enactment of Section 1446(c)(2). The plaintiffs insist the amount in controversy is limited to their hard damages of $38,109.51, (*id.* at 2), but this is patently incorrect, as addressed above. The plaintiffs continue to point to their capping of damages at a penny below the jurisdictional threshold, (*id.*), but, assuming for present purposes that this gesture remains part of the evidence the Court must consider in evaluating the amount in controversy, it does not outweigh the evidence that the amended complaint places in controversy almost $40,000 in hard damages, plus sufficient punitive damages to exceed the jurisdictional threshold.

For the reasons set forth above, the Court finds by a preponderance of the evidence that the amount in controversy at the time of removal exceeded $75,000, exclusive of interest and costs. The Court therefore concludes that it has subject matter jurisdiction over this action. The motion to remand is accordingly **denied**.

DONE and ORDERED this 24th day of June, 2022.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE